# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

v.

CHARLES SMITH,

Defendant.

NO. 3:05-cr-432

(JUDGE CAPUTO)

## MEMORANDUM

Petitioner Charles Smith is an inmate at the Federal Correction Institution in Fort Dix, New Jersey. Presently before the Court is Smith's Motion to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255. (Doc. 50). Because the Court determines that this Motion does not actually rely on newly discovered evidence, the Court finds the Motion untimely and will dismiss Smith's Section 2255 Motion.

## BACKGROUND

On November 1, 2005, Petitioner was indicted by a federal grand jury on ten counts related to traveling in interstate commerce with the intent to engage in illegal sexual conduct with minors, in violation of Title 18, United States Code, §§ 2423(a), (b), and (e), and 2422(b). (Indictment, Doc. 1.) On July 21, 2006, Smith pleaded guilty to count seven of the indictment, charging him with travel in interstate commerce for the purpose of engaging in illicit sexual conduct pursuant to 18 U.S.C. § 2423(b).[1] (Plea, Doc. 27.) Petitioner was sentenced to a term of imprisonment of one hundred twenty (120) months by United States District Court Judge Thomas Vanaskie on January 5, 2007, and he appealed on January 16,

---

[1] Petitioner incorrectly states that he pleaded guilty to counts one through six. (Pet. at 7.) In fact, all counts except count seven were dismissed on the motion of the Untied States. (Judgement at 1, Doc. 35.)

2007. (Judgement, Doc. 35; Doc. 36.) On February 26, 2008, the United States Court of Appeals for the Third Circuit affirmed the District Court's Judgement, finding that Smith had "knowingly and voluntarily plead[ed] guilty to the offense charged." *U.S. v. Smith*, No. 07-1144, 266 Fed.Appx. 214, 216 (3d Cir. 2008). Smith did not petition the United States Supreme Court for certiorari.

On March 9, 2011, Smith filed his Motion to Vacate pursuant to 28 U.S.C. § 2255 ("2255 Motion"). In his 2255 Motion, Smith made four claims relating to ineffective assistance of counsel and newly-discovered evidence: (1) that defense counsel failed to adequately investigate or present evidence of Petitioner's psychological problems or mental deficiencies; (2) that Smith's awareness of his "borderline mentality" constitutes newly-discovered evidence, but that his attorney could have easily determined as much for sentencing purposes; (3) that Smith's attorney failed to secure an agreed-upon downward departure for acceptance of responsibility; and (4) that counsel failed to investigate or present evidence of impotency that would have been crucial in Smith's defense. (Doc. 50 at 10-11.)

The procedural posture of this 2255 Motion is somewhat complex. On November 15, 2011, the Court concluded that each one of Smith's four claims within his 2255 Motion was untimely as falling well outside the statute of limitations period.[2] (Doc. 65.) The Court then

---

[2]The one-year limitations period for a Section 2255 motion does not begin with the issuance of a mandate of a court of appeals, but "starts to run when the time for seeking such [certiorari] expires." *Clay v. United States*, 537 U.S. 522, 532 (2003). As Smith's judgement was affirmed on February 26, 2008, and because he did not to seek certiorari to the Supreme Court, his judgment of conviction became final ninety days after the issuance of the Third Circuit mandate, on May 26, 2008. From then, he had one year, until May 26, 2009, to file his Section 2255 Motion. Since it was actually filed on March 9, 2011, it was clear that Smith's Motion was time-barred by the statute of limitations.

directed Smith to file a brief regarding the timeliness of his 2255 Motion within twenty-one (21) days or risk dismissal. Smith requested an extension of time to file this brief, and was granted an additional forty-five (45) days to respond on February 27, 2012. (Doc. 70.) This period has since lapsed. However, on February 28, 2012, Smith filed a document titled "Motion Requesting Reconsideration of Dismissal of Motion Under 2255 to Vacate, Set Aside, Or Correct A Sentence By A Person In Federal Custody Or In Its Stead Issue A Certificate of Appealability." (Doc. 71.) The Clerk of Court terminated this Motion as Smith's 2255 Motion has not yet been dismissed and because at that point Smith still had time to respond to the Court's earlier Order. However, as Smith explicitly "prays this Court to accept this instant motion to its November 15, 2011 Order since he never received said Order nor the original Order in the prison mail" (Pet'r's Br. at 1, Doc. 71), the Court will deem this document as the necessary brief in this matter–although, as explained below, the argument contained therein indicates it is more properly interpreted as a motion for reconsideration. In any event, the Court will now turn once again to the issue of the timeliness of Smith's 2255 Motion.

**I. Analysis**

"Motions pursuant to 28 U.S.C. § 2255 are the presumptive means by which federal prisoners can challenge their convictions or sentences that are allegedly in violation of the Constitution." *Okereke v. United States*, 307 F.3d 117, 120 (3d Cir. 2002). Section 2255 allows prisoners to collaterally attack their sentence by moving "the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). In order to prevail on a § 2255 motion, a petitioner must show "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so

fundamental as to render the entire proceeding invalid." *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir.2003). The remedy is intended only where "the claimed error of law was 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Davis v. United States*, 417 U.S. 333, 346 (1974) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

Section 2255 has a one-year statute of limitations that is subject to equitable tolling in exceptional circumstances. *Yao v. United States*, No. 10-3145, 2011 WL 4712203 at *3 (E.D. Pa. Oct. 7, 2011) (citing *Holland v. Florida*, 130 S.Ct. 2549 (2010)). Equitable tolling is only appropriate where "principles of equity would make the rigid application of a limitation period unfair." *Miller v. New Jersey State Dep't of Corrections*, 145 F.3d 616, 618 (3d Cir. 1998) (citation omitted); *McAleese v. Brennan*, 483 F.3d 206, 219 (3d Cir. 2007). Specifically, it applies: "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." *Mannella v. Comm'r*, 631 F.3d 115, 125 (3d Cir. 2011) (quoting *Hedges v. United States*, 404 F.3d 744, 751 (3d Cir. 2005)). Equitable tolling should be invoked "only sparingly." *United States v. Midgley*, 142 F.3d 174, 179 (3d Cir. 1998) (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)). A lack of familiarity with law is not sufficient, *United States v. Kimbrew*, No. 07-163, 2010 WL 2773149 at *2 (July 13, 2010), nor is attorney malfeasance alone, *Schlueter v. Varner*, 384 F.3d 69, 77 (3d Cir. 2004). Finally, an untimely petitioner must show that they were nevertheless diligent–"excusable neglect is not sufficient." *Miller*, 145 F.3d at 619 (citation omitted).

In his brief, Smith does not argue that equitable tolling should apply to any of his four claims in his 2255 Motion. Instead, he argues that I incorrectly held in my November 15, 2011 Memorandum and Order that Smith's newly-discovered psychological report is timely as it constitutes newly-discovered evidence.[3] In pertinent part, 28 U.S.C. § 2255(f)(4) provides that the one-year limitations period "shall run from the . . . the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." Thus, the sole issue before the Court is whether Petitioner Charles Smith was diligent in pursuing these newly-revealed psychological records. As stated above, I held in my November 15, 2011 Order that he was not–and I will therefore review Smith's arguments under the standard for a Motion for Reconsideration.[4]

The documents Smith seeks to present as newly discovered evidence consist of an Administrative Judge's review of Smith's 1995 Social Security Disability Claim, containing a

---

[3] I also held that Smith's impotency could not constitute newly discovered evidence as such information would have been squarely within Smith's personal knowledge, and that Smith had been treated for his condition as early as 2005. Smith does not address the timeliness of his impotency argument in his Brief and I will thus deem it abandoned.

[4] The basis for a motion for reconsideration under Local Rule 7.10 is essentially the same as that under Rule 59. *Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, No. 3:06–CV–1105, 2011 WL 4916397 at *2 (M.D. Pa. Oct.17, 2011). A judgment may be altered or amended if the party seeking reconsideration establishes at least one of the following: "(1) an intervening change in controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café, by Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir.1999). "A motion for reconsideration is not to be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant." *Ogden v. Keystone Residence*, 226 F. Supp.2d 588, 606 (M.D. Pa. 2002). A motion for reconsideration is an extraordinary remedy, and should be granted sparingly. *D'Angio v. Borough of Nescopeck*, 56 F. Supp.2d 502, 504 (M.D. Pa. 1999).

December 1994 evaluation stating that Smith had borderline intellectual functioning. (Motion at 6, 9-10, Doc. 50.) Though mailed to Smith, the full report was received by Petitioner's father in 1995, who explained to Smith that his claim had been approved, but never actually forwarded him any of the supporting documents. (*Id.*) Smith, however, finally received the pertinent documents from his father on December 15, 2010. (*Id.* at 6.) In my November 15, 2011 Memorandum and Order, I held that due diligence would have unearthed these documents far earlier. Specifically, the documents were addressed and mailed to Smith over fifteen years ago. Moreover, to the extent Smith had "severe emotional and psychological symptoms" that required extensive treatment and hospitalization that "continued at least through June 2005," (Mot. at 8, Doc. 50), I found it highly improbable that any cognitive impairment that had been uncovered at a Social Security Hearing over a decade earlier could have remained undiscoverable through all of that psychological scrutiny. Further, Smith's argument that his attorney's failed to present a diminished capacity defense that was "incredibly blatant and could have been easily discovered through a simple attorney-client conference" undermined Smith's position that these documents were undiscoverable with ordinary diligence. (Mot. Supplement at 1, Doc. 54.)

In his Brief, Smith does not raise any new arguments but reiterates that the psychological reports had been hidden from him by his father until 2010 due to his "fragile mental state." (Pet'r's Br. at 5, Doc. 71.) The Court is highly sympathetic with Smith's father's attempts to protect his delicate son from this upsetting news. However, the Court has previously addressed this argument and finds no clear error. It was exactly this fragile mental state which originally drove Smith to seek the treatment in which he was diagnosed with "major depression, anxiety, and bouts of suicide." (Mot. at 8, Doc. 50.) Smith was

eventually checked into a hospital for psychological treatment and saw many different doctors and counselors–in particular Dr. Sue Labar Yohey in December of 1994 who appears to have first documented "the existence of borderline intellectual functioning." (*Id.* at 8-9.)  Dr. Marie E. Badaracco then diagnosed Smith in February of 1995 with "a severely depressed mood, constricted affect, active suicidal ideation, and marked hopelessness and desperation." (*Id.* at 9.)  Then, at a Social Security review in April of 1995, the Administrative Law Judge concluded that Smith had "clearly documented a severe problem with major depression and borderline intellectual functioning." (*Id.*)  This finding by the Administrative Law Judge specifically indicates that Smith both possessed and presented documentation of his borderline intellectual functioning as early as 1995.  That his father then hid the results of the Social Security hearing does not alter this analysis, and the Court rejects the notion that Smith did not "know that the psychological reports even existed at the time of his sentencing." (Pet'r's Br. at 4, Doc. 71.)

Most importantly, Smith admits that "[h]ad counsel asked Defendant in detail about the extent of his injuries from his accident, his medical examinations and, most importantly, his psychological examinations, then clearly counsel should have investigated the entire accident records and talked to Defendant's psychologists and doctors." (*Id.* at 5.)  The Court agrees that diligence would have earlier uncovered the facts that Smith now characterizes as newly discovered, and again holds that due diligence would have uncovered this fact at or before the time of sentencing.  Thus, they are not, for Section 2255 purposes, newly discovered.  Unfortunately, while Smith's lawyer may have failed him, this potential ineffective assistance of counsel claim is now untimely, and the Court rejects the invitation to frame it as a claim of newly discovered evidence where no such exists.

**CONCLUSION**

Petitioner Charles Smith has not shown clear error in the Court's earlier finding of no newly discovered evidence sufficient to extend the filing period of a Motion to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255(f)(4).  Smith has a substantial psychological history, and due diligence would have uncovered evidence of his impaired cognitive functioning in either his medical reports or the records of the Social Security disability hearing. Accordingly, Smith's Habeas Corpus Motion under 28 U.S.C. § 2255 is dismissed as untimely.  Moreover, because Petitioner's motion is untimely, the Court has not ruled on the merits and there would be no basis for issuing a certificate of appealability as reasonable jurists would not debate whether the petition states a valid claim of the denial of a constitutional right or this Court's procedural rulings with respect to petitioner's claims.  *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  An appropriate order follows.


 April 23, 2012                             /s/ A. Richard Caputo
Date                                        A. Richard Caputo
                                            United States District Judge